**United States District Court**
**District of Columbia**

**AFFIDAVIT OF SPECIAL AGENT DARREN P. BUTLER IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANT**

Your affiant, Darren P. Butler, being duly sworn, hereby deposes
and states as follows:

A.  **Introduction and Agent Background**

1.  I make this affidavit in support of an application for a
search warrant for certain accounts controlled by the free web-
based electronic mail service provider known as MSN Hotmail
headquartered at 1065 La Avenida, Mountain View, California
94043.  The account to be searched is mralmeyda@hotmail.com which
is further described in the following paragraphs and in
Attachment A.  As set forth herein, there is probable cause to
believe that on the computer systems of MSN Hotmail, there exists
evidence, fruits, and instrumentalities of violations of Title 21
United States Code, Section 952 (Importation of a controlled
substance), Section 959(a) (Manufacture or distribution for
purpose of unlawful importation) and Section 963 (Attempt and
Conspiracy).

2.  I am a Special Agent of the Drug Enforcement
Administration (DEA) assigned to the Houston Field Division.  As
such, I am an "investigative or law enforcement officer" of the
United States within the meaning of Title 18, United States Code,
Section 2510(7), that is, an officer of the United States who is
empowered by law to conduct investigations of and to make arrests
for offenses enumerated in Title 18, United States Code, Section

2516(1).

3.   I have been employed by the Drug Enforcement
Administration ("DEA") as a Special Agent since November, 2002,
during which time I have specialized in investigations involving
narcotics trafficking.  I received sixteen weeks of training at the
DEA Academy at Quantico, Virginia, and have received extensive
training  pertaining  to  narcotic  investigations  and  the
investigation of various crimes which arise from drug trafficking
activities.

4.   I have received specialized training on the subject of
narcotics trafficking and money laundering from the DEA and have
been  personally  involved  in  investigations  concerning  the
possession,  manufacture,  distribution,  and  importation  of
controlled substances, as well as methods used to finance drug
transactions.

5.   I have participated in and conducted investigations of
violations of various State and Federal criminal laws, including
unlawful  possession  with  intent  to  distribute  controlled
substances,  distribution  of  controlled  substances,  use  of  a
communication facility to commit narcotic offenses, importation of
controlled substances, conspiracy to import, possess and distribute
controlled substances, and money laundering, all in violation of
Title 21 and Title 18, United States Code.  These investigations
resulted in arrests of individuals who have imported, smuggled,
received and distributed controlled substances, including cocaine,

marijuana, heroin, and MDMA, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

6.    I have also conducted investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also participated in the debriefings of many of those individuals arrested who later cooperated with the Government.

7.    I have directed numerous confidential informants and cooperating witnesses to successfully infiltrate various-sized narcotic enterprises via intelligence gathering, participation in consensual recordings and monitored purchases of controlled substances.    I have executed search warrants for controlled substances and I have conducted surveillance in connection with numerous narcotic investigations.

8.  I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including South America and Mexico.

9. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to

conduct drug transactions.  My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

10.    In my training and experience, I have learned that MSN Hotmail is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for MSN Hotmail subscribers may be located on the computers of MSN Hotmail. Further, I am aware that computers located at MSN Hotmail contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seeks authorization solely to search the computer accounts and/or files by following the procedures described herein and in Attachment A.

**B.  Background Regarding Computers, the Internet, and E-mail**

11.    The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12.   Based on my training, experience and knowledge, I have learned  the following:

a.   The  Internet  is  a  worldwide  network  of  computer systems  operated  by  governmental  entities,  corporations,  and universities. In  order  to  access  the  Internet,  and  individual computer user must subscribe to an access provider, which operates a  host  computer  system  with  direct  access  to  the  Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

b.   With  a  computer  connected  to  the  Internet,  an individual computer user can make electronic contact with millions of computers around the world.  This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

c.   E-mail  is  a  popular  form  of  transmitting  messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

d. Instant Messaging is a function  that some electronic communications service providers offer to their customers that provides simultaneous communication between computers.  Instant

5

messaging allows computer users who are logged on to the electronic communication service provider's instant messaging service to communicate by exchanging written electronic messages in real time, as if the users are having a conversation.

## C.  MSN Hotmail

13.  Based on my training and experience, I have learned the following about Hotmail :

a. Hotmail is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with MSN Hotmail. MSN Hotmail requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information.  However, MSN Hotmail does not verify the information provided;

b. MSN Hotmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

c. Subscribers to MSN Hotmail may access their accounts on servers maintained and/or owned by Hotmail from any computer connected to the Internet located anywhere in the world;

d. Any e-mail that is sent to an MSN Hotmail subscriber

6

is stored in the subscriber's "mailbox" on MSN Hotmail's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by MSN Hotmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on MSN Hotmail's servers indefinitely;

e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to MSN Hotmail's servers, and then transmitted to its end destination. MSN Hotmail users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the MSN Hotmail server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at MSN Hotmail, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

f. An MSN Hotmail subscriber can store files, including e-mails and image files, on servers maintained and/or owned by MSN Hotmail; and

g. E-mails and image files stored on a MSN Hotmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails

and/or other files on the MSN Hotmail server for which there
is insufficient storage space in the subscriber's computer
and/or which he/she does not wish to maintain in the computer
in his/her residence. A search of the files in the computer in
the subscriber's residence will not necessarily uncover the
files that the subscriber has stored on the MSN Hotmail
server.

## D.  Stored Wire and Electronic Communication Access

14.    Title 18, United States Code, Chapter 121, Sections
2701 through 2711, is entitled "Stored Wire and Electronic
Communications and Transactional Records Access."

a)    Title 18, United States Code, Section 2703(a),
provides:

> A governmental entity may require the disclosure by
> a provider of electronic  communication service of the
> contents of a wire or electronic communication, that
> is  in  electronic  storage  in  an  electronic
> communications system for one hundred and eighty days
> or less, only pursuant to a warrant issued using the
> procedures described in the Federal Rules of Criminal
> Procedure  by  a  court  with  jurisdiction  over  the
> offense  under  investigation  or  equivalent  State
> warrant.  A  governmental  entity  may  require  the
> disclosure by a provider of electronic communications
> services  of  the  contents  of  a  wire  or  electronic
> communication that has been in electronic storage in
> an electronic communications system for more than one
> hundred and eighty days by the means available under
> subsection (b) of this section.

b) Title 18, United States Code, Section 2703(b),
provides, in part:

8

(1) A government entity may require a provider of remote computing service to disclose the contents of

any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
     (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
(2) Paragraph (1) is applicable with respect to any electronic communication
     that is held or maintained on that service -
     (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
     (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -
(1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
(2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic

9

communications system.

e) Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
> (15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
> (17) "electronic storage" means –
>     (A)  any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>     (B)  any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**E.   Search Procedure**

15.  In order to ensure that Agents search only those computer accounts and or files described in Atachment A, this affidavit and application for search warrant seeks authorization to permit employees of MSN Hotmail to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

a. The search warrant will be presented to MSN Hotmail personnel who will be directed to isolate those accounts and

files described in Attachment A;

b.  In order to minimize any disruption of computer service to innocent third parties, MSN Hotmail employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

c.  MSN Hotmail employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

d.  Law enforcement personnel will thereafter review the information stored in the accounts and files received from MSN Hotmail employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

e.  Law enforcement personnel will then seal the original duplicate of the accounts and files received from MSN Hotmail employees and will not further review the original duplicate absent an order of the Court.

---

[1]The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional.  United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

## F.  Basis for Facts Contained in this Affidavit

16.    I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources:

a.    Oral and written reports about this investigation and others that I have received from United States law enforcement officers; and

b.    A review of log history and Internet Protocol addresses for e-mail accounts.

17.    Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Such statements are among many statements made by others and are stated in substance, unless otherwise indicated.  Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

18. I have not set forth each and every fact learned during the course of this investigation.  Rather, I have set

forth only the facts that I believe are necessary to establish
probable cause for the issuance of a search and seizure warrant
based on the instant affidavit.

## G.    Probable Cause

19.   Since at least March, 2004, Special Agents of the DEA
based in Guadalajara, Mexico, Houston, Texas, and Miami, Florida
have been investigating the activities of cocaine traffickers
operating out of Mexico City, Mexico.   The cocaine traffickers
are responsible for receiving multi-ton quantities of cocaine in
Mexico  that is shipped from Colombia.   The traffickers then
smuggle the cocaine through Mexico and into the United States.

20.    20. CS-1 has provided information as part of the
investigation to DEA Special Agents over the past several months
which has been corroborated and found to be credible.   CS-1 is
a former narcotics trafficker who, in the past, has acted as a
broker to set up deals of multi-hundred kilogram quantities of
cocaine.   CS-1 has also arranged for the transportation of
cocaine on his/her own behalf.   CS-1 has admitted to his/her own
involvement in narcotics trafficking activity and has agreed to
plead guilty to narcotics-related charges.   CS-1 is cooperating
in return for consideration in his/her own criminal case.
Records show that CS-1 has no prior convictions.

21.   CS-1 advised DEA Special Agents that he was in the
process of coordinating a cocaine shipment with his associate,

HUGO BARRERA-CAVAZOS ("BARRERA"). CS-1 advised that BARRERA has worked closely with CS-1 in the past in to coordinate cocaine shipments from Colombian sources of supply to Mexico.

24. CS-1 further advised DEA Special Agents that an individual named URIEL DEL ANGEL-TORRES ("ANGEL-TORRES") is an associate of  BARRERA in cocaine trafficking.  CS-1 stated that ANGEL-TORRES assists BERRERA by guarding BARRERA'S cocaine shipments and by facilitating the movement of the cocaine shipments through Mexico and into the Unite States.  CS-1 stated that ANGEL-TORRES uses an e-mail account named mralmeyda@hotmail.com.

23. On October 4, 2005, CS-1 received a telephone call from ANGEL-TORRES which DEA Special Agents monitored.  DEA Special Agents debriefed CS-1 concerning this call.  CS-1 stated that they discussed kilograms of cocaine, the type or brand, and the price of cocaine.  I believe from the explanation of CS-1 and my own knowledge of the use of coded language that traffickers commonly use that narcotics business was discussed. I know from my experience in examining kilograms of cocaine that they are frequently marked with symbols such as those described in the conversation.

24. CS-1 owns a laptop computer which he uses to communicate with other cocaine traffickers by email and instant messaging.  DEA Special Agents have consensually monitored much of CS-1's electronic communication. On October 27, 2005, DEA

Special Agents intercepted two instant messages between CS-1's e-mail account and the mralmeyda@hotmail.com account.  In one of the instant messages, ANGEL-TORRES stated in the Spanish language, "these are the license plates to the hot dog cars that we use to identify them in the park."  ANGEL-TORRES went on to list "Coca, H, T.H., Toyo, Verelo, and 2 Girls Giving Their Back."  ANGEL TORRES concluded by stating "those are all, what do you think?"  I believe from conversations with CS-1 and my own knowledge of the use of coded language which traffickers commonly use that narcotics business was discussed.  I believe that ANGEL-TORRES listed markings that narcotics traffickers place on kilograms of cocaine to identify the source and/or ownership of the kilograms.  I know that law enforcement agents have recently seized kilograms of cocaine with the markings "TH" and with a graphic that appears to be two figures sitting back-to-back.  CS-1 and ANGEL-TORRES used the mralmeyda@hotmail.com e-mail account to communicate as recently as November 8, 2005.

26.  On November 13, 2005, your affiant served MSN Hotmail with an administrative subpoena requesting any identifying information listed in the user profile and the internet protocol (IP) addresses from which mralmeyda@hotmail.com was being accessed.  On November 10, 2005, your affiant received a response to the subpoena from MSN Hotmail showing that the e-mail account named mralmeyda@hotmail.com is subscribed to Uriel del Angel-Torres in the state of Veracruz and the country of

Mexico.  The account was established on October 17, 2005.  No additional subscriber information was given.

27.  Log-on records from MSN Hotmail for the e-mail account mralmeyda@hotmail.com show that during the period from October 17, 2005 to November 23, 2005, eight log-ons were made to that e-mail account.

28.  On October 28, 2005, your affiant, pursuant to Title 18 U.S.C. § 2703(f), served written notice on MSN Hotmail requesting that MSN Hotmail preserve any information and/or stored electronic communications present on their servers that relate to the e-mail account elnuevozorro2@hotmail.com in order to assure that no email communications were lost from the above e-mail account.

29.  Since MSN Hotmail provides users with free accounts, a narcotics trafficker need not use his true identity to register an account.  Additionally, based on your affiant's training and experience, your affiant knows that it is a common practice for narcotics traffickers to use the same e-mail address to communicate by posting messages, thereby reducing their chance of being intercepted by law enforcement.  Any person may access the account if that person has been given the account password.  In practice, a person may sign on to the e-mail account using the password, write a draft e-mail, and then sign off of the account.  Later, another person in another location will sign on using the password, make changes or

otherwise acknowledge the receipt of the message, and sign off of the account.

30. Your affiant further believes that the contents of the above-referenced e-mail accounts will contain valuable information that will enable law enforcement agents to further the investigation of the drug trafficking activities of URIEL DEL ANGEL-TORRES and his associates, corroborate existing information, and identify potential defendants not presently known to your affiant.

## H.    Conclusion

31.    Based upon the information above, your affiant has probable cause to believe that on the computer systems owned, maintained, and/or operated by MSN Hotmail headquartered at 1605 La Avenida, Mountain View, California 94043 there exists evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy).  By this affidavit and application, I request that the Court issue a search warrant directed to MSN Hotmail to allow agents to seize e-mail, attachments and other information (described in Attachment A, part II) stored on the MSN Hotmail servers for the computer accounts and files, and following the search procedure described in Attachment A, part I.

## I. Request for Sealing

32.  Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation.  Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and the  attachment thereto be filed under seal until further order of this Court, and directing MSN Hotmail not to disclose to the subscriber(s) or any other person the existence of the same application, affidavit, search warrant and attachment, until directed to do so by the Court.

_____

Darren P. Butler
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 29th day of November, 2005.

_____

United States Magistrate Judge